## GIDDENS v CLEVELAND RY CO

Ohio Appeals, 8th Dist, Cuyahoga Co
No 10610.  Decided Nov 10, 1930

Harry C. Gahn, Cleveland, for Giddens.

Squire, Sanders & Dempsey, Cleveland, for Railway Co.

CLINE, J.

The evidence which the court was required to consider on the motion to direct a verdict should be construed in the light which is most favorable to the plaintiff. The question arises as to whether or not on such evidence there was a question for the jury, or whether it was the duty of the court to direct a verdict as was done in this case.

The statements of the trial judge to the jury that the plaintiff was satisfied that both of the employees of the Railroad Company were looking at him when he went between the cars, leave a reasonable conclusion to be drawn that they must have known he was between the cars when the Railroad Company started its car in operation.

The syllabus in the case of **The Painesville Utopia Theatre Company vs. Lautermilch, 118 Oh St 167,** reads as follows:

"Whenever, from conflicting evidence of the same witness or of different witnesses, it becomes necessary to weigh such conflicting evidence to determine wherein the probable truth lies, or from a combination of circumstances determine an ultimate fact, upon the determination of which different minds might reasonably arrive at different conclusions, it is the province of the jury to perform that function. It is reversible error for the court to invade that province of the jury."

There is a sharp dispute between the parties as to the negligence of each of the parties. Each counsel is very positive in his statement that the court was wrong or that the court was right.

It will not be questioned in view of the width of a street car, and that after one walks between two standing cars, he will be lost sight of by the operatives of the car. The record clearly shows that the two cars were standing still and had been static for some time when the plaintiff went between the cars for the purpose of crossing over. The record shows that while plaintiff was crossing over the bar, (whether he had hold of it or not is disputed), the street car company without warning or notice to the plaintiff, and after one of its operatives gave the order to "hold it," and after both saw him go between the cars for the purpose of passing over, started up its cars injuring the plaintiff.

During the argument counsel for the railroad company conceded that if the company knew, or in the exercise of ordinary care should have known, that if the plaintiff had placed himself in a place of danger on the bar separating the cars, or between the cars, and while in that dangerous position, the street car company had started up its cars without giving the plaintiff an opportunity to escape, the defendant would have been guilty of negligence and the last clear chance doctrine would have been applicable. That situation does appear from the record. The evidence shows that the cars were static at least five minutes; that one employee of the railroad company called out "hold it", from which it might reasonably be inferred, that the cars were to be held in their static position; both of the railroad employees saw the plaintiff, and it is likewise reasonable to infer that both of the railroad men saw the plaintiff go between the cars. While the plaintiff was between the cars in a dangerous position there is no doubt that the car started. No warning or signal was given by the railroad company that the car was about to be started. Because of the strating of the car and because of these conditions which existed, which are shown by the record, there was at least a scintilla of evidence to be presented to the jury, and such a state of facts existed that reasonable minds might easily differ concerning those facts on the inferences to be drawn from the evidence. In such a state of the evidence it was the duty of the court to submit the question of fact to the jury.

Even though there were doubt in the minds of the court as to whether or not the plaintiff was negligent it was his duty to have submitted the facts in this case to the jury, and not to have usurped a power which by the law of this State for many years is the province of the jury.

In the case of **West vs. Gillette, 95 Oh St 305,** the syllabus reads as follows:

"Where the motorman of a street car, in the performance of his duty to keep watch to learn of danger to persons who may be crossing the track on a public street crossing, discovers that the driver of a smaller vehicle is about to cross the track in front of his car, it is his duty to use ordinary vigilance and care to stop or check the car in order to avoid a collision.

"Where a collision occurs and such driver is injured and the undisputed evidence shows that the motorman actually saw such vehicle and had it continually in view for a considerable distance from the crossing, it is for the jury to determine whether he exercised such vigilance and care in the circumstances; and the fact that the driver may have been originally negligent in the manner of going on the crossing will not, as a matter of law, defeat his right to recover for the injury, if the motorman has not used such vigilance after discovering him."

**Erie Railroad Company vs McCormick, 69 Oh St 45,** and **Railroad Company vs. Kassen, 49 Oh St 230,** and **Railroad Company vs. Mackey, 53 Oh St 371,** are all the cases in which persons about railroad trains had gotten themselves into dangerous positions by their own carelessness, and the court held that under those circumstances the railroad company was negligent if it did not exercise due care for the safety of such negligent person.

In the plaintiff's view of the case the doctrine of last clear chance which was pleaded, was in the case for submission to the jury. The last clear chance doctrine does not exclusively depend on time. Although time may be an element to determine whether the concurring negligence of the parties exists under a given state of facts, yet viewed from the plaintiff's standpoint and from his evidence most favorably construed, which the court is required to do on a motion, the evidence shows that while the car was static, while the two employees of defendant were looking at the plaintiff, he put himself in a place of danger, and while in that place of danger without warning or signal, without giving the plaintiff an opportunity to escape, the railroad company started its car injuring the plaintiff.

While this action took but a short time, the majority of the court is of the opinion that there is no concurrence of negligence of the plaintiff and the defendant at the time the injuries occurred.

It is claimed in argument that the defendant during the trial of the case asked the court to direct a verdict for the Railroad Company because the plaintiff had his hands upon the coupler or bar, at the time he was injured and therefore he was a trespasser, and upon the ground that the plaintiff was a trespasser the court directed a verdict for the defendant. The record does not show upon what ground the court did direct a verdict, but if that were the ground upon which the trial court acted, the defendant seems to have abandoned that claim in this court, and it relies wholly upon plaintiff's contributory negligence to sustain the action of the trial court in that respect. We do not believe that any state of facts existed in this case which showed plaintiff was a trespasser.

The question also arose as to whether it was the duty of the defendant to have given a signal or warning to the plaintiff before the defendant started his car. This likewise, under the circumstances, was a question which the jury should have passed upon, and the action of the trial judge having refused to permit any evidence to be submitted to the jury as to whether or not the plaintiff gave a signal or warning, was clearly erroneous.

The action of the trial court in directing a verdict in this case is indicative of the tendency of some judges of this day. The great majority of the judges of our courts are able and fearless and certainly all of them honest, and they attend to their duties with that high devotion to public service which has brought to the bench such great honor and respect.

There is a tendency, however, which has been augmented in recent years on the part of some judges at least, to usurp unto themselves the function of the jury to determine contested questions of fact. Such judges following what they believe to be a trend of public sentiment, or following a personal belief grounded in their previous environment, have persistently assumed the duty which the law for many centuries has placed in the hands of the jury of determining disputed questions of fact.

A trial by a jury is not to be preserved simply because the institution is aged and its origin almost lost in the mists of antiquity, but, on the other hand, the fact that the jury system has survived through all these centuries indicates that it is believed to be a real bulwark of the people against judicial oppression, and that it has become an agency which preserves to them life, liberty and property.

The trend of the attack on jury trial has taken several forms, one of which is the suggestion that the jury be entirely abolished in all civil cases; another of which is that the jury be abolished in contract cases only and that it be permitted to serve in tort cases; another one is that the courts be permitted to advise the jury of the weight and effect of evidence and to discuss the credence to be given to the various witnesses, as may be done in the federal courts to-day, provided, of course, that the court informs the jury that his suggestions are merely his "opinion", by which the jury is not bound; another is the taking away from juries the right to decide contested questions of fact by the direction of verdicts by the courts.

No one has suggested, so far as I am able to learn that the jury trial be abolished in criminal cases. If the jury is of value in criminal cases, then it should be of value in tort cases. If it is of value in tort and criminal cases, then it should afford the same protection to the public in contract cases, and if all these elements tend to retain the respect of courts in the minds of the people, then the action of courts in erroneously usurping the function of juries cannot strengthen the jury system, but will tend to weaken it. Twelve men and women drawn freshly from the various walks of life, with their varied experiences, educations, trainings and contacts with other men and women, knowing and feeling the same emotions, sentiments, beliefs and ideals of the people, are more able correctly to determine questions of fact, than any judge on any bench, no matter how wise or learned he may be.

Experience after all is the greatest teacher. Upon experience for centuries the world lived and thrived, and when we take from our courts the experience of jurors, we are taking from the courts that element of strength and respect which has made the courts of this country revered and admired by our people.

Joseph H. Choate, one of the most learned lawyers of America, more than thirty-two years ago, in an address before the American Bar Association, said:

"So let me say, and again upon the same authority of personal experience

and observation, that for the determination of the vast majority of questions of fact arising upon conflict of evidence, the united judgment of twelve honest and intelligent laymen, properly instructed by a wise and impartial judge, who expresses no opinion upon the facts, is far safer and more likely to be right than the sole judgment of the same judge would be. There is nothing in the scientific and technical training of such a judge that gives to his judgment upon such questions superior virtue or value."

The layman who comes to court with his only lawsuit is burdened with one of the important affairs of his life; it is an event which he will discuss as long as he lives, and the judge, the lawyers and the witnesses present to him a living, moving drama. Few people have more than one lawsuit in a lifetime, most, fortunately, have none. The honesty of the jury is seldom questioned by litigants, but if the verdict were rendered by a judge, how quick and how prone they would be to criticize unjustly.

There are many cases in which it is the duty of the judge to direct a jury to return a verdict for one party or the other, but these cases usually are not difficult to determine. Where there is no question of fact to be submitted, or where under the law the proof of the undisputed facts gives no rise to a cause of action, the case cannot under our law be submitted to the jury; but where there is a scintilla of evidence to support an issue of fact giving rise to a cause of action under the law, the right to determine that issue is with the jury and not with the court.

This dangerous tendency to destroy and weaken trial must not further be advanced or the respect of the public for the courts thereby will be weakened and the great institution of our judicial system which, in the last analysis, preserves the public from the tyrannny and oppression of executive and legislative, and protects the constitutional rights of the public, is in danger of losing its position as one of the finest achievements of our complex social experience.

The judgment of the lower court is, therefore, reversed for error in directing a verdict at the close of the evidence of the plaintiff and for error in excluding evidence offered by the plaintiff of the omission of the defendant to ring a gong, and the case is remanded for further proceedings not inconsistent with this opinion.

Levine, J, concurs.

Vickery, PJ, dissents.

Vickery, PJ, dissenting:

My associates having concluded to reverse the judgment of the Common Pleas Court for error in directing a verdict for the defendant at the close of the plaintiff's testimony, I feel it my duty to dissent from such judgment and I will now give my reasons therefor.

It seems that The Cleveland Railway Company have a car barn at East 89th Street and Quincy Avenue and the tracks run from the street railroad in the street across the sidewalk into the car barn and it is necessary, in the course of their business, to use what they call an electric mule to shove the cars back and forth, and on this particular day when this accident occurred at about six o'clock in the evening, there was a motorman running one of these electric mules and to it was attached a car belonging to the Railway Company. It was switching and, in order to do so, had to come out across the sidewalk. At the time of this accident this mule was attached to one of the cars of the railway company by a bar five to eight feet long. That was in the coupler of the mule and the coupler of the car and it was stretched across the sidewalk, the mule out towards the street and the car in towards the car barns and this bar was about three feet above the sidewalk. There is a dispute in the evidence as to whether the car was moving or standing, but the plaintiff says that it was standing; that he came up and stood there for some time and he saw a person who jumped over this bar and went on, and that he undertook to do the same thing and from the evidence in the record he apparently put his hands on this bar and either slipped or stumbled and fell; and he fell on the street and the car was moving so he rolled himself over in order to get out from under the car and in doing so, his foot was caught in the switch and he was more or less injured and brought this action.

A jury was impanelled and sworn and the plaintiff's evidence was introduced and the motion was made to direct a verdict in favor of the defendant which the Common Pleas Court granted, and that is the error that is complained of and my asociates come to the conclusion that that directed verdict was erroneous and the case should be reversed.

Now it seems to the writer of this dissenting opinion that the record shows plainly and distinctly that the plaintiff was guilty of such contributory negligence as a matter of law which proximately caused his injuries that the court was undoubtedly right in directing a verdict, the presumption of negligence not having been removed upon his part.

Now here was a dangerous situation. Other persons came up there and stood. One man, more, agile perhaps than the plaintiff, succeeded in jumping across this bar, and so the plaintiff thought he could, and perhaps because he was not so spry or because he did not have time, he was caught, slipped or fell and was injured.

It must have been perfectly apparent to anybody that here was a situation that was dangerous and that when a man undertakes to go across a bar of that kind he takes his life in his own hands. It was perfectly apparent to anybody that this car attached by the bar to the mule might be moving any instant. Plaintiff himself says that he did not have much time because he had to jump so quickly and one or two witnesses testified that he was spry enough to get across and he either misjudged the movement of the car or his spryness and fell and was injured.

Now he says that the motorman saw him. There is no evidence in the record to show that the motorman supposed for a moment that plaintiff would go into this place of danger. Suppose the motorman did see him. Other men were seeing the movement of this train, if you can call it a train, and how could the motorman have any idea that this man was going to do such a foolhardy thing as to jump across the bar when the car was in that position. Evidently the plaintiff was in a hurry and he saw one man succeed in jumping across and he decided to do the same thing and misjudged, as already stated, either his agility or the time that the train was going to stand there. It could not have been over half a minute, a very short time at least that he would have had to have stood there, and there does not seem to be any such desperate need of hurry that he should have hazarded his life. I think myself that he is entitled to be congratulated in not having been more seriously hurt, in fact in not having lost his life.

This member of the Court thinks that this record shows that the plaintiff was not entitled to recover and that the record shows that he was guilty of contributory negligence; that he took the danger upon his own head when he undertook to go between those cars and jump across this bar, and for that reason this member of the Court thinks that the judgment of the court below should have been affirmed and for that reason he has dissented from the judgment of the majority of the Court.